Good morning, Your Honors, and may it please the Court. I want to begin this discussion with a citation to a case, Roth Greeting Cards v. United, that we discuss in our brief. This case holds, and I'd like to preserve five minutes for rebuttal. What this case holds is that in a case where copyright infringement is alleged, if the defendant is unable to produce evidence of independent creation, it, and I'm going to quote the Ninth Circuit here, it may well be clearly erroneous to find on a summary judgment that there is no infringement. Excuse me, Counsel, what case are you referring to? It's Roth Greeting Cards, Inc. v. United Card Co. I assume it was cited in your brief? Yes, it's at 893 F2D 898 901. All right, thank you. And in that case, what the Court finds and holds is that if a defendant is unable to present its version of the origination of this design, how this design came into being, that it would be improper to decide on summary judgment that there was no infringement. In this case, we have the defendant, Ms. Bubbles, conceding that they have no idea where the design that's on their garments came from. They allege only that it came from a company overseas that they can identify, and an author at that company that they can identify. And after doing that, after depriving us of knowing the identity of this person who did the copying, they then argue that we can't prove access by this copier. And I would submit that the burden of establishing access as required under the Copyright Act should be lessened when the defendant cannot identify who the copier is, because it would be presidential to attempt to require a party alleging that copying has occurred by a party that's not identified, requiring them to prove that this party that they can't identify accessed the design. It's especially important in cases nowadays because we're dealing with a lot of infringement that originates overseas, such as in this case where we have a design that was allegedly created in China. When you have a design that was allegedly created or copied in China, and because the defendants won't provide you with this information, you don't have the identity of that person, it's impossible to create a chain of events to that person to establish access. So part of your argument for access, the widespread dissemination argument, is relying on the sale of either 71,000 yards of fabric, which is how it's described in the opposition to the defendant's motion for summary judgment, or 50,882 square yards. So I'm not sure which you say in your brief. I'm not sure which it is. But can you help us understand why the sales of that amount of fabric constitutes widespread dissemination? It seems like a technical question relating to the nature of fabric sales. Absolutely, Your Honor. To get a better understanding of this, you have to understand how the fabric industry works, or the apparel industry works. In this case, L.A. Print X is a fabric provider. They create the designs, they print them on fabric, then they provide the fabric to what are known as fabric converters, who take the fabric and provide it to clothing vendors, such as Miss Bubbles. In this case, L.A. Print X is located downtown in Vernon. The way they do business is by making their lines available for people to come in, review, and then make purchases, or to come in, review, and take samples to other companies, such as Miss Bubbles, who then takes that design, purchases the fabric, and manufactures garments that it will then send to a retailer. In this case, we would submit that selling 50,000 yards into this marketplace in Los Angeles, in Vernon, in which Miss Bubbles is also a participant, not a competitor of L.A. Print X, because they don't actually print fabric or design the designs on the fabric, but they do purchase fabric, either from companies like L.A. Print X, or companies that are fabric converters that purchase or obtain designs from L.A. Print X. So by injecting 50,000 yards into the marketplace, the Los Angeles marketplace, or even more specifically, the Vernon marketplace, which is very small. I'm going to give you an idea. Miss Bubbles facility is located about a mile away from L.A. Print X's facility, and between those two companies, there's a couple dozen other fabric companies or apparel companies. Injecting that much fabric into the marketplace is sufficient to establish access, especially in a case like this, where we don't even necessarily know if or who created the design. And it's not like a case where, let's say, I have- Can I just interrupt you for a moment? Is there evidence that was presented to the district court in the record that the sales would be within Vernon or within Los Angeles, as opposed to throughout nationwide? Yes, Your Honor. The sales summary sheet that's before the court indicates the customers, and each of those customers, and this would have been testified to at trial, are within the Los Angeles marketplace. So if you look at the sales summary that was provided, you'll see clear evidence of the identities of the customers. And does it note that they're in L.A.? I'm trying to find my copy of the- The document itself doesn't- One of the problems with this ruling was that it was a summary judgment ruling made without any oral argument, so we weren't able to cover anything other than- You weren't able to point out- It's not pointed out in the declaration, and you weren't given the opportunity to point that out to the district court, is that- Well, the declaration does indicate that the Los Angeles area is where both parties do business. And to the extent that doing business means selling fabric, then yes, Your Honor, it would be. I just want to just real quickly, because I'm running out of time, provide the hypothetical, which I think is really illustrative here, and that is in 99.9% of copyright cases, there is one party saying, I created the design. Let's say I wrote a book, and I'm alleging that perhaps Your Honor created a book that copied my book. In each of those cases, the defendant is going to allege, I didn't copy the book. I didn't copy the book. I didn't have access to your design. In this case, the defendants are not alleging that the design on their garment was not copied. They can't, because they don't know who created the design on their garments. So to the extent- When you have cases where the defendant is not denying copying, at least to the extent that they're saying that they created it themselves, if you look in the evidentiary record, there's no declaration, no document, from anyone associated with the defendants that says, I created the design on defendant's garments. So do you want us to say, is what you're suggesting, that because the defendant didn't raise any countervailing evidence, then as a matter of law, summary judgment is inappropriate? I'm looking at your brief. You note that Roth concerned a case in which access was not in dispute, and so it was not exactly on point here. What sort of ruling are you looking at? I believe Roth still is on point, Your Honor, because there's sort of a spectrum or continuum that we can talk about in terms of access. You either have cases where access is conceded, like in Roth, or you have cases where access is disputed because the author says, I didn't create this design. In this case, we're somewhere in the middle, where there is no author saying, I created the design and I didn't have access to plaintiff's work. Here, what we're receiving from defendants is a resounding silence as to the authorship. And so we would submit that in cases where defendants are unable to provide any evidence regarding independent creation, and this is suggested in Roth, that the level of, or the sufficiency of evidence regarding access should be lower. Let me ask you a question. Why shouldn't the comparison to the allegedly imprinted shirts be based solely on the original design submitted to the Copyright Office, as opposed to the later produced copies of, I guess it's C-30020, on fabric and in various color combinations? Well, Your Honor, that's a good question. I think it's addressed head-on by this Court's ruling in 3 Boys Music. In that case, the Court holds that as long as the essential elements are there in the deposit copy, and there's no evidence, again, of fraud, that the copyright holder is not constrained by what's deposited with the Copyright Office. And to the extent it can show, as we would have shown in this case had there been oral argument or a trial, when you can show that there were these other additions injected into the marketplace, other colors, let's say, or other varieties where you've removed one screen, which is what happened in this case, which I can get into on rebuttal, when that happens, you're not confined to the deposit copy. Otherwise, the Copyright Office would be receiving dozens and dozens of different colors, dozens and dozens of different small variations. In cases where the new design does not rise to the level of being a derivative work, which would require a separate registration, the Copyright Office, the Copyright Act, wants parties to rely on the registration for the best addition. And that's why you have the directives in both the statutory language and the case law saying that the best addition... and the later reproductions are solely a product of the mechanics of the production process. Couldn't LA PrintEx have used a textile screen printing machine to manufacture a fabric version of C-320 that was more detailed like the deposit? Well, that's a two-part question, Your Honor. I'm going to address them in reverse order. The answer to your second question regarding the detail is no, because the deposit copy was done digitally on paper. But the fabric is... it's texture. Printing something digitally on paper is always going to be different than printing something with a rotary printing machine on fabric. That's to your second point. Then the first issue in the question, yes, you can create multiple versions of the same design through the technical process of printing, because the way printing is done, real briefly, is through... there's a number of screens that will go into a printing press. And depending on how complex the design is or how many colors you want, you'll add or remove screens. To the extent there's differences in the deposit copy in this case and the design that was infringed by the defendants, it's just a removal of one of the screens, the background screen. When you remove that screen, you get almost the exact design that's on the defendant's garments. Thank you. And the only other point I'd make before I step down is we cite to the Aliadi decision to indicate that a dissimilarity analysis is not the correct way to compare two works. And as you see in the court's ruling, the brunt of it in terms of the substantial similarity analysis is dissimilarity. They didn't take this part of the design. And of course, a pirate can never evade infringement by showing how much of the work he didn't steal. The old learned hand, a great turn of phrase. And that's what we have here. Every element in the defendant's design was taken from the plaintiff's design, but maybe they did not take some small portions of the plaintiff's design. And that's all. Thank you, Your Honor. Thank you. Your Honors. Good morning, Your Honors. Debra Sarias on behalf of Miss Bubbles, Inc. and Aeropostale, Inc. I would just note that the Roth case is an impermissible attempt to shift the burden of the plaintiff to establish access and substantial similarity. And in this case, the court carefully reasoned that there was no access based on the evidence before it. The evidence that it had was, on summary judgment, the declaration that Your Honor has pointed out simply said that thousands of yards of fabric had been sold. But then it cross-references attachments, and the attachments include the sales records, which show either 50,000 or 70,000, I guess, depending on how you look at it. But, you know, tens of thousands of yards of fabric. Why isn't that widespread dissemination? What's the argument for that? The evidentiary record number 375, which is the sales, and it appears several times in the record, was never substantiated. We don't know that those people they sold to were in Los Angeles or anything else. All he said, or could say under oath, was that it was thousands of yards. And that was basically where the district court looked. And analyzing it under the standard in the Ninth Circuit set forth in Art Attacks and the other cases dealing squarely, the three boys dealing squarely with access, that that was insufficient. It has to be more than a bare possibility. It has to be a reasonable possibility. And under the facts and what was in the record, there was no reasonable possibility. What would be widespread dissemination for fabric? For fabric, in some of the cases, and unfortunately most of these are from New York, because that's where the textile industry was located, and those cases really talk about issues where, I'm trying to remember if there was any yardage specifically mentioned, but it was more of an admission of sales to particular people, and they could point to exactly who they were selling to, where they were. More of a chain of events type analysis? Leaning more to that, because obviously that would deem it a widespread dissemination as well. Because looking at the widespread dissemination cases in our circuit, it seemed very ad hoc-ish, and small dissemination is okay for rugs, but not okay in another context. So I was wondering if there was any yardstick for widespread dissemination of fabric, and it sounds like there isn't. There isn't. It seems to be on a case-by-case analysis. The case that I really focused on when I was trying to prepare for this was the Art Attacks case, because in that case it was a similar thing. The design was printed on the T-shirts, and there were people walking around, and they had the billboard type thing saying people would have seen it. And in three boys, the music had been distributed for a long period of time, and so that one showed widespread dissemination because it had been played on the radio for a long period of time. In this case, you don't really have that, and the inconsistent declarations, frankly, point to the fact that the court was saying you're just showing me a bare possibility, and I'm reluctant to say that there was widespread dissemination based on the evidence before me, because even as you point out, setting forth a sales record, that doesn't even – well, we objected to it on the basis that it was not an established business record, but other than that, it doesn't say who they sold to. It doesn't say anything. And the fact that two businesses are in the Los Angeles area, again, only creates a bare possibility of dissemination. Counsel, Judge Gould, if I could interject a question, please. How do you respond to the appellant's argument that if there is no affirmative evidence shown of how the design was created, that the burden of showing access should be lower? I don't – I still think that there has to be some evidence of access more than a bare possibility. We were able to show that – well, in addition to that, they also have to show striking similarity and – or substantial similarity. So it's not that even if the burden was lower, there's still another hurdle that they have to overcome. May I follow up on that? Why shouldn't the comparison to the allegedly imprinting shirts include the later produced copies of C30020 on fabric and in various color combinations as opposed to just the original design? Okay. On this one, it's more of a policy argument. There is a code of federal regulation, 2020.20X, which requires a deposit to include a swatch of the fabric, and it was not done in this case. What they submitted was this digital version with the lace in the background, and that's what the court relied on. And I don't think that they can be heard to complain that they created – well, that it doesn't match. They argued that it doesn't have to be under the regulations of swatch of fabric. And I can't remember the exact words of the regulation, but it says, And they said, well, we did the something else, so we're covered. But what's wrong with that? That was a very good question. What's wrong with it is that there is an admission that they created certain fabric to look more like what the defendants were actually producing. So when I look at the fabric, and it's hard for an untrained eye, but you can see if you're just looking at similarities instead of dissimilarities, it does seem like there's the same number of blossoms, the same number of buds, the same number of leaves, and then there's that little three-leaf thing. So it does look – and the spacing is similar – it does look similar. And so my question in looking at it is, well, why isn't that enough at least to get past summary judgment? Well, because you have to look at what the standard is in the Ninth Circuit, and under the Apple computer case, and again recently talked about in the Bratz case, unprotectable copyright claimant cannot place reliance on the similarity and expression of unprotectable elements. So there's just certain ways to make a flower. When you make a flower and it's got stems and it has to look like a flower, there's just certain ways to do that. But those pages from the Chinese book of the different designs, they didn't look anything at all like the – they looked completely different than the samples, the swatches. Well, I disagree. There were quite a few volumes, and the court asked for all of them originally, and we had tabbed all the pages, and there are actual volumes in these red books of Chinese design where there are hundreds and hundreds of pages, and he did not quote from them, only in passing in a footnote that these appear to be similar to the well-traveled terrain of floral design. There's just so many ways to show a flower. And so by looking at the two and looking at the similarities, which were unprotectable elements, then the court went through a very detailed analysis of how they were different, and that was consistent with what other cases have done, and I'm just talking about when counsel talked about the dissimilarity analysis being improper. There was no other way. The dissimilarities were more pronounced, which is what cases discussing floral design specifically from the Southern District of New York have focused on as well. It's a proper analysis because once you take away a stem and a flower, that's what you have left. The next thing is... Counsel, if I could ask you one question on that. Is it the case that substantial similarity has to be shown on the protected elements? Substantial similarity was shown on the protectable elements, I believe, but I think you have to take away that substantial similarity when you're looking at it under the Apple case because those are not protectable. I mean, I think that that was the court's similarity analysis, and the court specifically said that it was of a surface nature only. What does that mean? I mean, like, you look at the little three-leaf thing that's interspersed, and it's the same in the deposit copy and it's the same in the Aeropostale design, and that seems... I mean, obviously, there's only so many ways to do a leaf, but to have the three little leaves together and then have it spaced in the same way does seem like a similarity. Why is that not... Why does that make it a surface similarity only? I'm not even sure what that means. I think the cases looking at these types of elements, like the Bratz case with the puffy lips, those are the types of things I think that there was only a certain way to make that expression. It's similar to the question that Judge Gould just asked. There is substantial similarity as to an unprotectable element, but the inquiry does not stop there. You have to go and look at the things that aren't protected and see whether there's any differences, and in this case, the court went through each of the things, the shades of color that he was able to look at and other things, the lace background, and found that those dissimilarities were pronounced sufficient to get over... I mean, to grant summary judgment. Well, what is protectable for a flower design? I would think that a stem, a leaf, and something that looks like a flower would be... No, those are unprotectable. I'm sorry. What was the question? The opposite. What would be protectable? Because if you say everything about a flower is what you find in nature, and there's only so many ways you can do a flower, what would be protectable about a floral design? I guess the expression and things around the flower and the different... maybe more prongs or something. I can't come up with every possible thing, but I think that certain detail in the actual color and maybe the outlining with some of the things that the court pointed out here that were different would be protectable. It's not an exact copy. I don't even think that there's a dispute on the other side that it's not an exact copy. There are differences. And if you look at them, there are differences. And in this well-traveled terrain of floral patterns, the courts have said that modest distinctions are sufficient to avoid a finding of substantial similarity. Because of this problem, there's just certain ways to make a flower. So it may require a lesser standard of modification to make it different. Okay. Any more questions I think that I've addressed? I think we're ready. Thank you for your time. Thank you. Real briefly, and may it please the court, the assertion that roses are not subject to copyright, we would take issue with under that. Counsel, would you keep your voice up? I'm sorry. We would take issue with the argument that roses are not subject to copyright protection. There's been dozens and dozens of cases in which roses or naturally occurring elements are subject to copyright protection. Counsel, if I could ask you a question on that. It seems that you can have a copyright if there are parts of the expression that are protectable. But some parts would not be. Like if someone draws a picture of a rose and it's red and has green leaves, you probably couldn't point to the fact that in another picture the rose is red and the leaves are green and say those are similarities. Right? You have to show similarities in some type of expression that is not common to all roses. Absolutely, Your Honor. Our client is not attempting to paint a monopoly over floral designs. Our client simply is seeking protection for this particular expression of a floral design, an expression that was created by hand by our client's artist. I think a good point was made when discussing these books of roses from antiquity. And, of course, the novelty textiles case that we referenced in our brief indicates that the fact that other rose designs existed in antiquity is of no bearing unless they can show that one of the parties copied from these books. But it's illustrative to the extent that it shows that there are thousands and thousands and thousands of ways to draw a rose or a bouquet of roses. And given the fact that there's thousands and thousands and thousands of ways to do that, the fact that the design on defendant's garments, who again are right down the street from my client, is so substantially similar to our client's design is proof positive that there was copying by this unnamed person in China or elsewhere. The concession on oral argument by defendants that the designs are substantially similar is enough at least to get this to a jury. If a jury hears the proximity of the defendants, if it looks at the designs, and we've provided for the court at evidentiary record 757, 758, a 21-item analysis, breakdown of the similarities. Counsel, excuse me for the interruption, but I heard opposing counsel talking about unprotectable similarities. I'd like to go back to Judge Aikuda's question. What are protectable similarities? Protectable similarities in this case would be the original expression that was captured in the tangible medium. In this case, the design. Such as? Such as the entirety of the floral patterns. Even the colors, while not protectable by copyright, can be an issue of copying. If you have an allegedly infringing copy that's in the same color as your client's original design, that's not copyrightable, but it's still an issue of copying. Because we have to kind of drill down on the fact that we're looking at copying here. So the number of blossoms, is that protectable or not protectable? So the number of blossoms were the same in the two designs. The number of buds, is that protectable or unprotectable? I mean, what's the protectable elements of your design? Under crop, we'd be looking at the extrinsic elements first off, which would be every single element of the designs. The bouquet, the number of buds, the way that they're arrayed on the page, the interstitial elements, the elements between the flowers. The entirety of the design, the totality of the design, is subject to copyright protection. You don't filter out the unprotectable elements in a visual work of art like you would in, let's say, a computer program or a novel, where in novels you have scenes that bear elements. You know, the private investigator is always smoking a cigar. Those are stock elements. In visual art, you don't have stock elements, because you can create visual art in so many different ways. Defendants can see there's numerous, dozens, thousands of ways to draw a flower. So there is no scenes that bear. There is no stock elements. We have an original expression that was created by an artist, and the totality of it is protectable. You're over time. Yeah, let me just wrap up real briefly on the chain of access argument that was made. Again, we would state that the chain of access is broken because there's a link in that chain that they can't identify. Again, you can hear them identify the author of this. So to establish the chain of access to that copier, it's not possible. And under Campbell v. U.S., if there is information that is only within the purview of the defendant's record and we don't have access to it, we are entitled to the negative inference. And I think that would pertain to the access question. And even without access, the designs are virtually identical. And with virtual identity, you do not need a showing of access, because the virtual identity itself is evidence that access was had before the copying occurred. And finally, on the art attacks case, again, that was circumstantial evidence, and it was done very ad hoc, which makes it a perfect question for the jury to consider. And finally, because there is no evidence of independent creation, we would ask the court to not only reverse the ruling of summary judgment or summary adjudication against our client, but to enter summary adjudication on liability in favor of our client under, amongst other cases, 20th Century Fox, which holds that when there's no evidence of independent creation, summary judgment is appropriate for the plaintiff. And thank you for your time. Thank you. Okay, the L.A. print text, the AeroPostal, number 56187 is submitted.
judges: Nelson, Gould, Ikuta